UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
UNITED STATES OF AMERICA            :
                                    :        MEMORANDUM AND ORDER
        -against-                   :
                                    :        07-CR-265 (ENV)
STEVEN COREN,                       :
                                    :
                        Defendant.  :
---------------------------------------------------------------x

**VITALIANO, D.J.**

Steven Coren pled guilty during trial on March 20, 2009 to a host of charges relating to a prevailing wage fraud scheme. He also pled to an obstruction of justice charge relating to the underlying grand jury investigation. Coren now moves (again) to dismiss the indictment, this time arguing that the confection of mail fraud, wire fraud, and money laundering charges fails to state any cognizable offense. Alternatively, he moves to withdraw his guilty pleas to all counts, arguing that they lacked a factual basis under Federal Rule 11 and that, in any event, he had not entered his pleas knowingly or voluntarily "because he never intended to deprive the government agencies of money or property or contemplated a loss of the government entities' money or property" (Def.'s Br. at 12). For the reasons stated below, the motion to dismiss the indictment and the alternative motion to withdraw the guilty pleas are denied.

## BACKGROUND

Familiarity with the facts is presumed.[1] In sum and substance, the charges in the superseding indictment arose out of schemes to defraud government agencies by creating the false appearance that laborers, working for contractors who were awarded construction contracts

---

[1] For a more detailed discussion of the facts, background, and controlling law, see the decision on defendant's original motion to dismiss. United States v. Coren, No. 07-cr-265, 2008 WL 4488995 (E.D.N.Y. Aug. 29, 2008).

1

by those agencies, were being paid the "prevailing wage" as required by the Davis-Bacon Act, 40 U.S.C. § 3142 ("Davis-Bacon") and New York Labor Law section 220, et. seq. ("Little Davis-Bacon"). Both Davis-Bacon and Little Davis-Bacon obligate contractors to submit payroll information to the contracting public agency and to certify under the penalties of perjury that they have complied with applicable prevailing wage requirements. See 29 C.F.R. § 5.5(a)(3); Hopkins v. Unites States Dep't of Hous. & Urban Dev., 929 F.2d 81, 86 (2d Cir. 1991).

Following the introduction of surreptitiously recorded conversations and the testimony of cooperating witnesses during the first week of a projected five week trial, Coren pled guilty to all 16 counts in the superseding indictment. Four months later, Coren moved against the indictment and, alternatively, his guilty pleas. The Court held oral argument on July 31, 2009. The Court acknowledges receipt of the unexpected post-argument supplementation of both sides.

## DISCUSSION

I.   **Dismissal of Indictment**

It is well-established that a knowing and voluntary guilty plea waives all non-jurisdictional defects in any prior stage of the proceedings, United States v. Maher, 108 F.3d 1513, 1528 (2d Cir. 1997), and, notwithstanding, that challenges regarding defects in the indictment must be raised before trial. Fed. R. Crim. P. 12(b)(3). However, a court can consider claims that the indictment fails to invoke the court's jurisdiction or to state an offense at any time. Fed. R. Crim. P.12(b)(3); see also United States v. Davila, 461 F.3d 298, 308 (2d Cir. 2006). Nonetheless, in short, given the current posture of this case, the often herculean burden borne by a defendant seeking to dismiss an indictment is, if anything, greater. See United States v. Stavroulakis, 952 F.2d 686, 693 (2d Cir. 1992) ("We have often stated that 'an indictment

need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime'".)

Preliminarily, since the mail and wire fraud statutes use the same relevant language, the Court analyzes them collectively. See United States v. Schwartz, 924 F.2d 410, 416 (2d Cir. 1991). Additionally, Coren's motion to dismiss the money laundering charges hinges on the conduct that forms the basis of the fraud charges. Essentially, Coren argues that if his conduct cannot constitute wire and mail fraud, the contracting government agencies could not have been deprived of money or property, and, without such criminal proceeds, neither can the resulting money laundering charges survive. All or nothing.

As to substance, in order to sustain a charge of mail and/or wire fraud, the government must prove three elements: (1) a scheme to defraud victims of (2) money or property, through the (3) use of the mails or the wires. id.; see also, United States v. Walker, 191 F.3d 326, 334-35 (2d Cir. 1999). The first element, the "scheme to defraud" component, is, of course, at issue here, though the crux of Coren's argument rests on the second element—whether the victims identified in the indictment (the contracting government agencies) were deprived of any money or property.[2]

Coren contends that the public entities with the contractual and statutory right to enforce and benefit from the prevailing wage laws had no property right in jeopardy, but simply had an interest "ancillary to regulation." (Def.'s Br. 2). Stated another way, Coren's view is that the contracting agencies "got the benefit of their bargains in terms of their property interests" because "the only thing the agencies were cheated out of was the ability to monitor and regulate compliance with prevailing wage laws" designed to ensure a living wage for workers. (Def's Br. 3).

---

[2] The third element is not in dispute.

This Court strongly disagrees. Having work on government owned projects actually done by prevailing wage workers is a fundamental part of the contract that the victim agencies bargained for and expected to receive. See, e.g., United States v. Novak, 443 F.3d 150, 159 (2d Cir. 2006)(finding "intent to harm" element of fraud crime met where defendant's compliance with the law was a fundamental part of the bargain between the parties); United States v. Novod, 923 F.2d 970, 974 (2d Cir. 1991) (finding that offer to sell permit to operate a waste dump site was contingent on extracting certain promises affecting how the permit would be used and thus, the permit constituted "property" within the reach of the fraud statutes), *reh'g granted, rev'd on other grounds*, 927 F.2d 726 (2d Cir. 1991). Surely, a contracting agency's interest in compliance with the prevailing wage laws is regulatory and societal. But, as manifested by the contracts in evidence, it is also proprietary. Under elemental principles of the law of contract, how more fundamental to the bargain can a contract provision be than one which the parties agree that, if breached, conveys to the non-breaching party the right to terminate the contract and holds the breaching party liable for cover?

Beyond the words of the contract, this point is punctuated by Davis-Bacon's legislative history. As then-Congressman Fiorello H. LaGuardia remarked on the House floor, "this bill is for the benefit of the government and the workers" since, he argued, the workmanship from non-prevailing wage workers was "of course very inferior" to the workmanship of a prevailing wage worker. 74 Cong. Rec. 6510 (Remarks of Mr. LaGuardia). President Herbert Hoover, in a letter to his Secretary of the Treasury, made the identical point that requiring contractors to pay the prevailing wage ensures that they "employ the best type of American mechanics and laborers on Federal work". 74 Cong. Rec. 6506; see also id. at 6512 (Remarks of Mr. Cochran stating that Davis-Bacon safeguards against "cheap labor, inferior labor", and that Davis-Bacon's enactment "means much to the [g]overnment, as it will result in the employment of the best class of

mechanics in the construction of public buildings"). Davis-Bacon also "enable[s] the [g]overnment to get better returns for its money in higher efficiency and greater skill." Id. at 1931 (Remarks of Mr. Briggs).[3]

The contracts identified in and at the heart of the indictment are all cut from this cloth. It is clear that having the construction work done by prevailing wage workers was a fundamental and essential part of the bargain, and that fact was sufficiently alleged in the indictment to sustain a Rule 12(b)(3) attack on the fraud charges. See, e.g., United States v. Walker, 191 F.3d 326, 336 (2d Cir. 1999); United States v. Frank, 156 F.3d 332 (2d Cir. 1998) (regulatory compliance was an essential part of the bargain); United States v. Schwartz, 924 F.2d 410, 420-21 (2d Cir. 1991)(explicit condition of compliance was an essential element of the bargain).[4]

Although Coren asserts that contract rights do not constitute property rights, his contention is at odds with caselaw. See United States v. Miller, 997 F.2d 1010 (2d Cir. 1993)(citing United States v. Granberry, 908 F.2d (8th Cir. 1990)) ("A contract right can constitute § 1341 property"). Indeed, Coren cites no case categorically holding that contract rights can *never* be "property" within the meaning of the fraud statutes. In any event, in addition to the contract rights he claims do not qualify as property, Coren misses the simplicity of other agency property at issue here— namely, the actual funds that are owned and controlled by the

---

[3] Enforcement of Little Davis-Bacon appears to follow the same rationale. See "A Message from Comptroller William C. Thompson, Jr." in Office of New York City Comptroller William C. Thompson, Jr., *Prevailing News – NYC: A Publication of the Bureau of Labor Law about Prevailing Wage and Living Wage Enforcement* (May 2006)("Quality construction depends on well-trained workers. Contractors who pay prevailing wages ensure that their employees are highly skilled and know how to work safely and productively.") See Fata v. Healy Co., 289 N.Y. 401, 46 N.E.2d 339, 341 (1943)("It cannot be doubted that provisions requiring the contractor to pay [the prevailing wage] are also inserted in the contract...for the benefit of the laborers *as well as for the benefit of the public body* which is a party to the contract (emphasis added).

[4] United States v. Evans, 844 F.2d 36 (2d Cir. 1988), cited by defendant, vacated fraud convictions arising out of defendants' alleged efforts to arrange arms sales to Iran, deceiving the United States about the destination of the arms. However, that case (which was decided prior to Schwartz) is not to the contrary since the circuit *assumed* that the government did not assert any property right arising out of the sale of weapons owned and possessed by the United States immediately before the fraud, but only rights arising out of the sale of weapons owned by third countries at the time of the fraud.

victim agencies that were used in paying Coren's co-conspirators to improve and build on premises owned by the agencies. Both the original and the superseding indictment state, for example, that "on the advice and counsel, and with the assistance, of the defendant Steven Coren, [cooperating witnesses] falsely represented to NYCHA that Corporation-1 and Corporation-2 paid a total of approximately $227,756.42 in fringe benefit contributions on behalf of Corporation-1 and Corporation-2's prevailing wage workers. *As a result, $1,871,562.95 in government funds was fraudulently obtained by Corporation-1 and Corporation-2.*" (Superseding Ind. 9 ¶21)(emphasis added).

Neither does the "intent to harm" element of the fraud charges offer a shield. This element too is clearly present on the face of the indictment. Unlike United States v.Starr, 507 F.3d 82 (2d Cir. 2007), an essential element to these construction contracts is the contemporaneous certification that workers on such public works projects are being paid the prevailing wage. In other words, the scheme "depend[ed] for [its] completion on a misrepresentation of an essential element of the bargain—which [] violate[s] the mail and wire fraud statutes." Starr, 507 F.3d at 108. Specifically, for example, the superseding indictment charges that, "[b]etween May 2000 and December 2000, on the advice and counsel, and with the assistance, of the defendant Steven Coren, CW-1 and CW-2 falsely represented to NYCHA that Corporation-1 and Corporation-2 paid a total of approximately $227,756.42...on behalf of...[its] prevailing wage workers. As a result, approximately $1,851,562.95 in government funds was fraudulently obtained by Corporation-1 and Corporation-2. (Superseding Ind. 9 ¶21).[5]

In sum, the indictment unmistakably charges that the scheme rested in part on inducing government agencies to make payments to the contractors based on their certifications that workers were receiving the prevailing wage, as required not only by law but contract as well.

---

[5] Similar allegations are made in paragraphs 27, 28 and 29 of the superseding indictment.

Regardless any other interest or impact, the intent to harm element of a fraud claim can be satisfied by depriving a victim of the benefit of its bargain as to an essential and fundamental element of that bargain. See Frank, 156 F.3d at 332 (finding that regulatory compliance was an essential part of the bargain); see also United States v. Catapano, 2008 WL 3992303, at *6 (E.D.N.Y. 2008)(rejecting defendant's argument that the harm, if any, was caused to "social goals" rather than property or pecuniary interests). The superseding indictment put Coren on notice of the fundamental importance of prevailing wage compliance to the bargain, charging that "if the contracting [agency] finds that a worker is being paid less than the prevailing wage, [it] can terminate the contract, or withhold payment from the contractor". (Superseding Ind. 2-3 ¶3). The agencies lost their bargain and the payments wrongfully made to the defrauding contractors. Coupled with the language of the federal fraud statutes laying out the elements of the crime, the superseding indictment sufficiently apprised Coren of the nature of the charges against him, as well as the factual basis for them.

The balance of Coren's arguments on this point fare no better. First, Coren's attempt to characterize this case as an "honest services" fraud[6] is, at best, a red herring. The superseding indictment alleges that Coren devised a scheme and artifice to defraud the named government agencies of its money or property, not honest services. Accordingly any reliance on United States v. Handakas, 286 F.3d 92 (2d. Cir 2002), *overruled by* United States v. Rybicki, 354 F.3d 124 (2d Cir. 2003), and United States v. Rybicki, 354 F.3d 124 (2d Cir. 2003)(en banc) is misplaced.[7]

---

[6] See 18 U.S.C. § 1346.

[7] In Handakas, the jury acquitted the defendant of fraud under the theory of fraud charged here but convicted under the honest services fraud theory not charged here. In United States v. Rybicki, an honest services fraud case, the court explicitly declined to consider the money or property issue. See Rybicki, 354 F.3d at 128 n.1 ("Inasmuch as the defendants were prosecuted under sections 1341 and 1343 in combination with 1346, we have no occasion to consider whether they would also have been prosecutable under sections 1341 [mail fraud] or 1343 [wire fraud] standing alone"). It too is inapposite.

7

Similarly, Coren's rule of lenity argument (now twice-invoked) is fruitless.[8] Coren's argument—provocative in its first incarnation— is rather pedestrian now. Prosecution under the mail and wire fraud statutes for devising a scheme or artifice to defraud a victim of money or property is hardly a novel concept, though the schemers continue to prove inventive in their scheming. See, e.g., Novod, 923 F.2d at 974 (sale of a permit); United States v. Turoff, 701 F.Supp. 981 (E.D.N.Y. 1988)(manipulation of New York City taxi medallions); United States v. Catapano, No. 05-cr-229, 2008 WL 3992303, at *6 (E.D.N.Y. 2008)(compromising minority business enterprise ("MBE") program goals). The rule of lenity, simply, does not apply.

Finally, Coren's late through the transom argument that the indictment had been constructively amended is also without merit. A conviction can be overturned on constructive amendment grounds where the government's proof and theory of the case modify essential elements of the offense charged and create a substantial likelihood that the defendant may have been convicted of an offense that is different than the one charged by the grand jury. See United States v. Vebeliunas, 76 F.3d 1283, 1290 (2d Cir. 1996). But if the defendant had notice of the "core of criminality to be proven at trial," United States v. Patino, 962 F.2d 263, 266 (2d Cir. 2003), the constructive amendment argument cannot be sustained.

Although he may have had other crimes in contemplation as well, plainly, Coren had notice of the "core of criminality" actually to be proven at trial and he demonstrated such awareness throughout the proceedings. The indictment charges, and always has charged, Coren with counts of mail and wire fraud pursuant to a "money or property" theory under 18 U.S.C. § 1341 and § 1343. It also clearly set forth the underlying conduct that was the basis for the counts charged—conduct that Coren admitted to during his plea allocution. Moreover, proposed closing jury instructions submitted by the government *and* the defense demonstrate that both

---

[8] See discussion of the rule of lenity on Coren's first motion to dismiss. United States v. Coren, No. 07-cr-265, 2008 WL 4488995, at *7-8 (E.D.N.Y. Aug. 29, 2008).

8

<

sides understood that the mail and wire fraud claims were being pursued under a "money or property" theory of fraud, perpetrated *against* the named government agencies, all consistent with the counts charged in the indictment. The government's theory, and the fraudulent schemes described in the superseding indictment never wavered. Indeed, from the words of the indictment to Coren's own words at his plea allocution, there was never a constructive change—nothing new, no surprises. This argument, as are the others, is without merit. Consequently, Coren's motion to dismiss the fraud and money laundering counts of the indictment is denied.

### II.    Plea Withdrawal on the fraud and money laundering counts

Neither is the ground fertile for Coren's alternative prayer that he be permitted to withdraw his guilty pleas. Coren contends that he is entitled to such relief on two fronts: (1) because the pleas lacked factual bases and (2) because the pleas were not entered into knowingly or voluntarily. Since the arguments are advanced intertwined they will be addressed in tandem.

A defendant who pleads guilty unconditionally admits to his guilt and waives his right to appeal all non-jurisdictional contentions. United States v. Maher, 108 F.3d 1528 (2d Cir. 1997). Therefore, prior to accepting a guilty plea, a court must determine whether a factual basis for the plea exists, or, in other words, "that the conduct to which the defendant admits is in fact an offense under the statutory provision under which he is pleading guilty." Maher, 108 F.3d at 1524. In deciding whether this standard is met, the court can rely on any facts the record places at its disposal. Irizarry v. United States, 508 F.2d 960, 967 (2d Cir. 1975).

Since the Court accepted Coren's guilty plea to all counts, and he has not yet been sentenced, the Court can permit withdrawal but only if Coren can show a fair and just reason for it. Fed. R. Crim. P. 11(d)(2)(B). In making that determination, the Court considers (1) whether he has asserted innocence as the basis for the motion, (2) the lapse of time between the plea and

the withdrawal motion, and (3) prejudice to the government by withdrawal of the plea. United States v. Schmidt, 373 F.3d 100, 102-03 (2d Cir. 2004). Obviously, a court need not consider prejudice if the defendant cannot establish a fair and just reason to withdraw the plea. United States v. Torres, 129 F.3d 710 (2d Cir. 1997). Courts can also look to whether the defendant has raised a significant question as to the voluntariness of the plea, id. at 103, but similarly, this question need not be reached if the defendant cannot otherwise sustain his burden of showing that a "fair and just reason" exists for withdrawal. United States v. Rosen, 409 F.3d 535, 546 (2d Cir. 2005). A district court has broad discretion in determining whether to allow withdrawal. United States v. Cuoto, 311 F.3d 179, 186 (2d Cir. 2000).

Coren argues that his plea allocution "said nothing about his intent to deprive the state agencies of any money, property, or contract rights" and that "[n]othing in the record shows he understood that an intent to deprive the agencies of money or property was a necessary element of the offense, or provided a factual basis for finding that he possessed such intent." (Def.'s Br. 20-21). In other words, he claims that he is "legally innocent" of the mail and wire fraud crimes as charged in the indictment that he also claims he never understood.[9]

The record proves otherwise. Manifestly, the record supports and reflects that Coren had notice of the nature and elements of the charges against him, and, more critically, that he understood those elements at the time of his plea. Specifically, following the trial testimony of the case agent Steven Perez, who testified as to the nature of the scheme, and Simon Whitley, the controller of one of the defrauding contractors and a cooperating witness, who testified that approximately $250,000 of contract money had been withheld from one of Coren's clients, Serrot Construction ("Serrot"), when a contracting agency, the New York City Housing Authority, concluded that Serrot was not meeting its prevailing wage obligations (Trial Tr. 50,

---

[9] Coren does not, however, allege that he is factually innocent of the charged acts, and has fully admitted to morally culpable conduct and conduct he acknowledges was criminal under other, uncharged provisions of law.

130-36, Mar. 17, 2009) and that Coren had assisted Serrot in submitting falsified payroll certifications, which resulted in the release of the agency's funds to Serrot (Id. at 158, 162), Coren offered the following at his plea allocution:

| | |
|---|---|
| **The Court:** | Now, Mr. Coren, Mr. Schoenbach on behalf of all your counsel has indicated to the Court that they've had a full and fair opportunity to discuss this matter with you. Do you believe that you've had a full and fair opportunity to discuss this matter with them? |
| **Coren:** | Yes. Yes. |
| **The Court:** | Are you fully satisfied with the representation that you've received in the case from your attorneys? |
| **Coren:** | Yes, I am, Judge. |

(Tr. of Plea Hr'g 6).

| | |
|---|---|
| **The Court:** | And you have received a copy of the charges against you, have you not? |
| **Coren:** | I've seen the superseding indictment, yes. |

(Id.). The allocution even went on to inquire about defense considerations:

| | |
|---|---|
| **The Court:** | Are you aware of legal defenses to the charges? |
| **Mr. Schoenbach:** | Judge, I'm aware actually of many legal defenses but we've had this discussion and Mr. Coren understands them fully. We believe that this is the most appropriate avenue to pursue. |
| **The Court:** | Availability as opposed to the viability. |

| **Mr. Schoenbach**: | The availability as opposed to the viability and this has been the most enlightening week. |

(Id. at 23).

Simply stated, any argument by Coren that his plea was not made knowingly or voluntarily, either because he was unaware of potential defenses available to him or he has a new awareness of concerns about his ability to appeal this Court's pre-trial ruling on his first motion to dismiss, must fail in light of the statements made by Coren and his counsel during his plea allocution. A "strong presumption of verity" attaches to a defendant's sworn statements at the time of the plea, United States v. Gonzalez, 970 F.2d at 1101 (quoting Blackledge v. Allison, 431 U.S. 63, 74 (1977)), so a defendant's subsequent bald statements that simply contradict his prior sworn statements are not sufficient grounds for plea withdrawal. United States v. Torres, 129 F.3d 710, 715 (2d Cir.1997).[10] Substantively, moreover, with respect to the fraud charges, Coren stated, in relevant part, the following:

| **Coren**: | I am pleading guilty today because I'm guilty of all the crimes charged in the indictment… I advised those clients that they could falsely claim to the [g]overnment agencies that they had fully satisfied their obligation…by their contributions to the CBT *so they could get paid on certain contracts*. I knew I was advising my clients to do so and violated the prevailing wage laws. *I assisted them in defrauding [g]overnment agencies* under their contracts, and this was wrong. |

(Id. at 26)(emphasis added). Coren has not submitted any affidavit to cause the Court to doubt

---

[10] This is also because society has a strong interest in the finality of guilty pleas, and allowing withdrawal of pleas not only undermines confidence in the integrity of our judicial procedures, but also increases the volume of judicial work and delays and impairs the orderly administration of justice. See United States v. Schmidt, 373 F.3d at 102-03 (citations omitted) (quoting United States v. Torres, 129 F.3d 710, 715 (2d Cir.1997), and United States v. Maher, 108 F.3d 1513, 1529 (2d Cir.1997)).

12

that his sworn statements are anything but true (nor would such a self-serving statement necessarily change the result).[11] Based on Coren's statement of his own criminal conduct, and considering the record as a whole, including trial testimony from Perez and Whitley, the Court finds that Coren has not even raised a significant question that his plea was unknowing or involuntary.

Procedurally, defendant does not argue that the Court was obliged to inform him of every available defense during the plea allocution (Tr. of Oral Argument 44, July 28, 2009), and the Court finds no authority that requires it to do so. Certainly, as to the new legal defense raised on this motion, there is no such obligation, especially given that the Court has determined the defense to be meritless. The record demonstrates that Coren was satisfied with his representation by counsel, that his plea was a knowing and voluntary decision, made in light of the ongoing trial and in full understanding and awareness of the nature and elements of the charges against him. (Tr. of Plea Hr'g 26). Furthermore, even assuming that Coren's counsel should have informed Coren of the availability of this meritless defense recently raised, the record gives no indication that Coren's decision to plead guilty was premised on the lack of available defenses. Coren's plea allocution, to the contrary, focused on his culpability, and counsel acknowledged an actual decision to forego defenses for want of viability. An unconsidered, after-thought, meritless defense does not change the equation.

Similarly, the Court rejects any implication that Coren's plea was not made knowingly or voluntarily since "Mr. Coren was not advised—by his counsel or the court—that the plea of guilty waived all non-jurisdictional issues on appeal." (Def.'s Reply Br. 22). Rule 11(b) and caselaw do not recognize any obligation to allocute with respect to the right to appeal, absent a plea agreement. As the record reflects, there was no plea agreement nor formal waiver by Coren

---

[11] See United States v. Arteca, 411 F.3d 315 (2d Cir. 2005).

of *any* appellate right:

> **The Court:** Now, as I understand it, Mr. Schoenbach, there is no plea agreement in that matter; is that correct?
>
> **Mr. Schoenbach:** There is no plea agreement other than the [g]overnment's promise not to pursue a forfeiture count or counts related to this indictment.
>
> **Ms. Coyne:** That's correct. We plan to dismiss the forfeiture count at sentencing.

(Tr. of Plea Hr'g 10). Indeed, at plea allocution there was no indication by Coren or his attorneys that the preservation of appellate rights was in any way a consideration:

> **Mr. Mukasey:** He stopped the proceeding. He has accepted responsibility. He's here because he wants to continue to litigate the sentencing issues which are open, after all, and start putting an end to this, not create a new problem beginning.

(Id. at 34). In addition, while the affidavit by one of Coren's attorneys, Mr. Schoenbach, avers that he did not discuss with Coren the "money or property" aspect of the fraud charges that is now the subject of this second motion to dismiss, that affidavit does not offer a similar averment regarding Coren's right to appeal the Court's ruling on the initial motion to dismiss. Lastly and most significantly, it is far from clear that Coren has waived any right to appeal the order denying his initial motion to dismiss. His counsel certainly refused to concede that it had, in fact, been waived. (Tr. of Oral Argument 45-46, July 28, 2009). Without doubt, in certain circumstances, the Second Circuit has reached the merits of a trial court's pretrial rulings, even in the absence of a formal conditional plea agreement, where the gravamen of the appeal attacks

14

the trial court's jurisdiction or the indictment's failure to state a crime, which may be raised at any time, even on appeal. See, e.g., United States v. Garcia, 339 F.3d 116 (2d Cir. 2003); United States v. Glick, 142 F.3d 520, 523-24 (2d Cir. 1998). Whether such an appeal will lie is a matter for the court of appeals. That defendant raised such a question, at best, requires its consideration now only as it might bear on the voluntariness of Coren's plea. And, on this record, the Court concludes it cannot support a finding that Coren has raised "a significant question about the voluntariness" of his plea. United States v. Torres, 129 F.3d 710, 715 (2d Cir.1997).

With respect to the four-month gap between plea and motion, this consideration actually militates against withdrawal of the plea as well. The gap cuts against Coren's assertion that his plea was neither voluntary nor knowing. See United States v. Gonzalez, 970 F.2d 1095, 1100 (2d Cir. 1992)(citing United States v. Fernandez, 734 F.Supp. 599 (S.D.N.Y.1990)(denying withdrawal motion made four months after plea and after defendant had been furnished with Probation Department's sentence calculation), *aff'd mem.*, 932 F.2d 956 (2d Cir.1991). It is also well-established that a defendant's "change of heart" after reevaluating the government's case against him or the potential penalty to be imposed is not a sufficient reason for withdrawal. United States v. Gonzalez, 970 F.2d 1095, 1100 (2d Cir.1992). Drawing all permissible inferences in favor of the government and against the defendant, United States v. Maher, 108 F.3d 1513, 1530 (2d Cir.1997), the Court finds that Coren has not shown that a "fair and just reason" exists to allow withdrawal of his guilty pleas to the fraud and money laundering counts.

### III.   **Obstruction of Justice**

Count 16 in the superseding indictment charges Coren with obstruction of justice, pursuant to 18 U.S.C. § 1512(c)(1)-(2) and 3551, et. seq., in connection with the proceedings of the grand jury that returned indictments relating to prevailing wage violations. Coren argues that

15

a "government investigation" is not an "official proceeding" within the meaning of § 1512(c) and that, accordingly, his plea allocution "did not establish a factual basis". (Def.'s Reply Br. 12). More expansively, while again conceding his moral culpability, Coren contends that he did not intend to disrupt an "official proceeding" and, in any event, his plea was defective since he allocuted to obstructing a "government investigation" only. At his plea allocution, Coren stated the following:

> **Coren:** Finally, regarding the count in the indictment charging obstruction of justice, I admit that on February 3rd, 2006, I advised Nomi Beig in response to a question he posed to me that he should destroy a computer flash drive containing documents that I advised him to remove from his office when I heard that his company was under investigation. I knew that by doing so Nomi would be destroying documents that could have been used in a [g]overnment investigation. I knew what I was doing was wrong. I accept responsibility for my actions. I knew what I was doing was wrong and illegal.

(Tr. of Plea Hr'g 27).

The allocution, however, is bolstered by the record at large. Coren's plea was in response to the charge that he "did knowingly, intentionally and corruptly alter, destroy, mutilate, and conceal records, documents, and other objects, and attempt to do so, with the intent to impair their integrity and availability *for use in an official proceeding, to wit: a Federal Grand Jury investigation in the Eastern District of New York*". (Superseding Ind. 19-20 ¶45)(emphasis added). This portion of the indictment was read as part of the instructions given the jury at the start of trial. (See Trial Tr., 12-13, Mar. 17, 2009). Therefore, although Coren's submissions now imply that he did not intend to obstruct an "official proceeding" because his allocution referred to a "government investigation", Coren had notice of the nature of the charge, and, the

16

nature of the "government investigation," *i.e.* a grand jury investigation, and that such an investigation was an official proceeding. Accordingly, his allocution, considered with the rest of the record, satisfies the Court that there was a factual basis in the record for his plea, and that the plea to the obstruction charge, as with the other charges, was made knowingly and voluntarily.[12]

In aggregate, the Court finds that Coren has raised no significant question as to the voluntariness of his pleas, and that no fair and just reason exists to allow Coren to withdraw his guilty plea with respect to any of the counts. Therefore, the alternative branch of Coren's motion is denied as well.

## CONCLUSION

For the reasons stated above, the motion to dismiss the indictment's fraud and money laundering charges or, in the alternative, to withdraw his guilty plea to each count of the superseding indictment is denied.

SO ORDERED.

Dated: Brooklyn, New York
August 20, 2009

ERIC N. VITALIANO
United States District Judge

---

[12] Coren argues, alternatively, that if his motion to dismiss the other counts were to be granted or his plea to these counts permitted to be withdrawn, and should the government wish to pursue the obstruction count, "constructed, as it was, during an investigation based on erroneous legal notions," he should be able to defend that count, standing alone, and that the withdrawal of his guilty plea to count 16 should be permitted, if for no other reason, in the interests of justice. Since no relief is awarded to Coren on any of the other counts, that aspect of Coren's motion is denied as academic.

17